NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK T.,[1]<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-1421 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Frederick T.'s[1] ("Frederick" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, who denied Frederick's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must answer two questions. First, did Administrative Law Judge Jason Mastrangelo ("Judge Mastrangelo" or the "ALJ") properly assess Frederick's medically determinable impairments? Second, did Judge Mastrangelo analyze, with substantial evidence, Frederick's residual functional capacity under the Social Security Act?

### A.    PROCEDURAL POSTURE

On May 16, 2022, Frederick filed an application for a period of disability and disability

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

insurance benefits, alleging an onset date of January 1, 2017. (Administrative Record ("AR") at 68.)[2] Frederick, at the time of the alleged onset date, was 43 years old. (*Id.*) The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 69–78), and on reconsideration, (*id.* at 80–88). Thereafter, Frederick requested a hearing before an Administrative Law Judge ("ALJ"). (*See id.* at 105–06.) On February 8, 2024, Judge Mastrangelo held a hearing, and heard testimony from Frederick, who was represented by counsel, and Kenneth Smith, a vocational expert ("VE"). (*Id.* at 37–67.) On April 17, 2024, Judge Mastrangelo issued a written decision finding that Frederick was not disabled. (*Id.* at 14–32.) The Administration's Appeals Council denied Frederick's request to review Judge Mastrangelo's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on the docket on April 23, 2025. (ECF No. 6.) Frederick then filed his moving brief ("Pl. Br.," ECF No. 10), the Commissioner filed an opposition ("Opp.," ECF No. 12), and Frederick replied ("Reply," ECF No. 13).

**B.    JUDGE MASTRANGELO'S DECISION**

As stated in his April 17, 2024 decision, Judge Mastrangelo held that Frederick was not disabled under the prevailing Administration regulations. (*See generally* AR at 14–32.) To reach this decision, Judge Mastrangelo analyzed Frederick's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). At Step One, Judge Mastrangelo found that although Frederick had worked from 2017 through March 2023, his earnings were below substantial gainful levels. (*Id.* at 16–17 (citing 20 C.F.R. § 404.1571 *et seq.*).)

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 6-1 through 6-9. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

At Step Two, Judge Mastrangelo found that Frederick suffers from seven severe impairments: asthma, obesity, depressive disorder, anxiety disorder, PTSD, bipolar disorder, and hearing impairment. (*Id.* at 17–19 (citing 20 C.F.R. § 404.1520(c)).) Judge Mastrangelo concluded that these severe impairments "significantly limit" Frederick's ability to perform basic work. (*Id.* at 17.) Judge Mastrangelo also found that Frederick has seven non-severe impairments: obstructive sleep apnea, hypertension, migraines, allergies, rheumatoid arthritis, irritable bowel syndrome, and chronic obstructive pulmonary disease. (*Id.* at 17–18 (citing AR at 339–50, 496–598, 603–04, 725–809).) Judge Mastrangelo concluded based on medical evidence in the record that each of these non-severe impairments did not "cause[] more than a slight limitation for 12 or more consecutive months" in Frederick's ability to work. (*Id.* at 17; *see id.* at 17–19.)

By way of example, Judge Mastrangelo assessed ample record evidence related to Frederick's physical health to determine that Frederick's rheumatoid arthritis was not a severe impairment:

> The claimant has received little treatment for this condition. There are few symptoms noted in the record due to this condition. The claimant's treatment notes generally showed no acute distress, normal appearance, normal neck findings, normal neurologic findings, normal musculoskeletal findings, normal range of motion findings, and normal gait. The consultative examiner also reported no acute distress, normal gait, ability to walk on heels and toes, ability to get on and off the exam table, normal grasping strength, normal manipulative functioning, normal range of motion of all joints, 5/5 strength in all extremities, intact sensation, and normal reflexes.

(*Id.* at 18 (citations omitted) (citing AR at 339–50; 518–73; 732–805).) Judge Mastrangelo also considered other impairments—like, *inter alia*, Frederick's allergies and irritable bowel syndrome—and similarly determined that these conditions could not "be considered severe." (*Id.* (concluding that "no doctors found any functional limitations due to" Frederick's allergies) (citing

3

AR at 496–598, 725–809); *id.* (noting that Frederick's irritable bowel syndrome "was described as being resolved") (citing AR at 544).) With respect to Frederick's migraines, the non-severe impairment at issue in this appeal, Judge Mastrangelo also found that Frederick had "received little treatment for this condition" and that there were "few symptoms noted in the record." (*Id.* at 18 (citing AR at 725–809).)

In addition, Judge Mastrangelo determined as part of Step Two that four of Frederick's alleged impairments were not medically determinable. (*Id.* at 19.) Specifically, Judge Mastrangelo concluded that Frederick's alleged pseudodementia, autism spectrum disorder, and obsessive-compulsive disorder ("OCD") had not been established by any "objective mental status examinations or other diagnostic tests" in the record. (*Id.*) With respect to Frederick's alleged chronic fatigue syndrome ("CFS"), Judge Mastrangelo found that, while Frederick's treating doctor had reported the impairment, the medical record "contain[ed] no clinical signs or laboratory findings for this condition." (*Id.* (citing AR at 603–23).)

At Step Three, Judge Mastrangelo determined that Frederick did not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526); *see id.* at 19–22.) As a precursor to Step Four, Judge Mastrangelo concluded that Frederick had the residual functional capacity ("RFC") to perform "medium" work, *see* 20 C.F.R. § 404.1567(c), but that any job he performed had to be limited in specified ways:

> The claimant must avoid concentrated exposure to extreme cold, humidity, noise, vibration, hazards (machinery, heights, etc.), and fumes, odors, dusts, gases, poor ventilation, etc. The claimant can remember simple instructions. The claimant can sustain attention and concentration to carry out simple tasks and instructions. The claimant can frequently interact with coworkers, supervisors, and the general public. The claimant can tolerate simple changes in a

4

routine work setting. The claimant can use judgement to make
simple work-related decisions.

(AR at 22.) Judge Mastrangelo's RFC determination came after his "careful consideration of the
entire record," assessing the objective medical evidence, medical opinions, and prior
administrative medical filings ("PAMFs") in the record. (*Id.*)

Based on this assessment, Judge Mastrangelo determined that Frederick's "medically
determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at
23.) However, he found Frederick's "statements concerning the intensity, persistence and limiting
effects" of his symptoms "not entirely consistent with the medical evidence and other evidence in
the record." (*Id.*) Specifically, Judge Mastrangelo concluded that ample record evidence suggested
Frederick could perform medium work—that Frederick (1) was able to work, albeit in a limited
capacity, during the time-period at issue; (2) maintained general day-to-day independence;[3] and
(3) exhibited generally normal mental and physical health. (*Id.* (citing AR at 223–33, 239–48, 250,
277–84, 339–50, 355–481, 518–73, 605–23, 625–710, 717–23, 732–805).)

For example, Judge Mastrangelo discussed evidence in the record that suggested, in
pertinent part, that Frederick's physical health was essentially "normal." (*Id.*) The record indicated
that Frederick had "no acute distress, normal appearance, normal neck findings, normal respiratory
findings, regular heart rate and rhythm, normal neurologic findings, normal musculoskeletal
findings, normal range of motion findings, and normal gait." (*Id.* (citing AR at 518–73; 732–805).)
As to Frederick's mental health, Judge Mastrangelo similarly noted:

[Frederick's] treatment notes generally indicat[e] neat appearance,
normal grooming, normal psychomotor behavior, normal speech,
calm and cooperative behavior, no delusions, no hallucinations, no

---

[3] As Frederick himself outlined in his Adult Function Report, Frederick was capable of completing
household chores like doing the laundry, vacuuming, loading the dishwasher, shopping for groceries, and
taking care of his roommate's dog. (*See* AR at 285–92.) Frederick also acknowledged that he drove, (*id.* at
288), even if he is sometimes "nervous behind the wheel," (*id.* at 45).

> suicidal ideation, normal mood, congruent affect, normal thought
> processes, normal alertness, intact orientation, normal cognitive
> functioning, normal thought content, good insight and judgment,
> normal memory, and adequate attention.[4]

(*Id.* (citing AR at 355–481; 518–73; 625–710; 717–23; 732–805).)

As part of the RFC determination, Judge Mastrangelo also reviewed the record medical evidence related to Frederick's "complaints, symptoms, and treatment from 2017 to the present." (*Id.* at 23.) As Judge Mastrangelo explained, some of the evidence was consistent with Frederick's alleged symptoms and moderate impairment: Various medical reports indicated that Frederick suffered from obesity, bipolar disorder, PTSD, anxiety, occasional "agitated behavior and motor activity," at least one report of suicidal ideation, and instances of acute respiratory symptoms and conditions. (*Id.* at 23–24 (citing AR at 351–495, 496–598, 605–23, 624–715, 716–24).) However, evidence in the record consistently indicated that Frederick generally exhibited normal psychological behavior, cognitive function, respiratory health, heart health, and range of motion. (*Id.*) Judge Mastrangelo also discussed Dr. Francky Merlin's consultative examination from November 18, 2022. (*Id.* at 24 (citing AR at 339–50).) Dr. Merlin noted several of Frederick's impairments, including his history of asthma, hypertension, and obesity. (*Id.*) Dr. Merlin's examination, however, "reported . . . otherwise normal findings" related to Frederick's demeanor, respiratory health, and heart health. (*Id.*) In particular, Dr. Merlin discussed Frederick's physical health and found that Frederick's gait, grasping strength, manipulative functioning, joint range of motion, and reflexes were all normal, and he was able to "walk on heels and toes" and "get on and off the exam table" normally. (*Id.*)

Judge Mastrangelo next evaluated the persuasiveness of the medical opinions and PAMFs

---

[4] As Judge Mastrangelo discusses later in his opinion, the record indicates that Frederick reported one instance of suicidal ideation on August 1, 2023. (AR at 24 (citing AR at 611).)

in the record.[5] As is relevant to this appeal, Judge Mastrangelo assessed the opinions of Frederick's treating therapist Ms. Anne Scherbina (LAC/NCC) and treating physician Dr. Charles Peeples. (*Id.* at 25; Pl. Br. at 19.) Ms. Scherbina opined that, since 2017, Frederick had "extreme limitations" in his ability to work: Frederick could not understand, remember, and/or carry out detailed instructions; concentrate for an extended period; work in coordination with others; or accept instructions or criticism from supervisors. (AR at 25 (citing AR at 599–602).) Ms. Scherbina further concluded that Frederick had marked limitations in his memory, ability to maintain a schedule and routine, and ability to "maintain socially appropriate behavior" with coworkers and the general public. (*Id.*)

Judge Mastrangelo found Ms. Scherbina's opinions unpersuasive. Judge Mastrangelo observed that Ms. Scherbina relied on Frederick's self-reported symptoms and did not substantiate her opinions with any objective findings. (*Id.*) Judge Mastrangelo concluded that Ms. Scherbina's opinions were "not supported by or consistent with the evidence in the record." (*Id.*) Judge Mastrangelo noted that evidence of Frederick's (1) work history, (2) "general independence with activities of daily living," and (3) treatment notes describing Frederick's cognitive function, memory, and attention "all suggest greater functional abilities than those noted by Ms. Scherbina." (*Id.* (citing AR at 223–33, 239–48, 250, 277–84, 355–481, 518–73, 625–710, 717–23, 732–805).)

Judge Mastrangelo then evaluated Dr. Peeples' opinions. In his reports from August and October 2023, Dr. Peeples concluded that Frederick's mental impairments "frequently interfere[d] with his ability to maintain attention and concentration," prevented him from "focus[ing] on work

---

[5] Frederick does not challenge Judge Mastrangelo's assessment of the 3rd Party Adult Function Report by Susan Pappa, Frederick's roommate. (AR at 29 (citing AR at 266–76).) The ALJ concluded that Ms. Pappa's report "cannot be found fully consistent with the evidence." (*Id.*) Accordingly, Frederick has forfeited his challenge to Judge Mastrangelo's assessment of that report. *See Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

tasks" or "interacting with others," and "limited his ability to participate in gainful employment and/or occupational training." (*Id.* (citing AR at 603–04, 615, 619–20).) Dr. Peeples also opined that Frederick had extensive physical limitations that "required unscheduled breaks 2-3 times per hour with each break lasting 15-20 minutes" and that Frederick "would miss more than 3 days of work per month." (*Id.* (citing AR at 604).)

Judge Mastrangelo found Dr. Peeples' opinions unpersuasive "because they [were] not supported by or consistent with the claimant's treatment notes, the claimant's work activity, the claimant's daily activities, or Dr. Merlin's findings." (*Id.*) Judge Mastrangelo concluded that these four categories of extensive evidence—indicating that Frederick's physical and mental health were generally "normal" and allowed him to perform at least some work—"all suggest greater functional abilities than those noted by Dr. Peeples." (*Id.* (citing AR at 223–33, 239–48, 250, 277–84, 339–50, 355–481, 518–73, 732–805).) Judge Mastrangelo observed that there were "simply no objective findings to support [Dr. Peeples'] significant restrictions." (*Id.*)

Judge Mastrangelo also analyzed Frederick's subjective testimony. (*Id.* at 28.) Judge Mastrangelo chronicled Frederick's extensive Adult Function Report, where Frederick detailed his subjective symptoms, including "frequent infections," concentration and memory issues, and physical limitations moving and working.[6] (*Id.* (citing AR at 285–92).) At the February 2024 hearing, Frederick testified about his "nervousness" driving, problems sleeping, anxiety and manic episodes, and difficulty interacting with others. (*Id.* (discussing AR at 44–61).) Frederick also testified about the physical limitations noted in the record and again asserted that he has frequent infections that affect his ability to work. (*Id.*) Judge Mastrangelo concluded that Frederick's

---

[6] As Judge Mastrangelo recounted, Frederick asserted that "[h]is impairments affected his ability to lift, squat, bend, reach, walk, hear, climb stairs, see, remember, complete tasks, concentrate, understand and follow instructions, and use his hands. He could walk 30-50 feet before needing to stop and rest." (AR at 28 (citing AR at 285–92).) Frederick also stated that he used hearing aids and a scooter at times. (*Id.*)

testimony "cannot be found fully consistent with the evidence" in the record, (*id.*), specifically Frederick's work activity, general day-to-day independence, physical and mental treatment notes, and Dr. Merlin's findings, (*id.* at 28–29 (citing AR at 223–33, 239–48, 250, 277–84, 339–50, 355–481, 518–73, 625–710, 717–23, 732–805)).

At Step Four, Judge Mastrangelo concluded that Frederick was not capable of performing his past relevant work as a toll collector or receptionist. (*Id.* at 29–30 (citing 20 C.F.R. § 404.1565).) At Step Five, Judge Mastrangelo, based on the testimony from the VE, determined that "an individual with [Frederick's] RFC would be unable to perform the claimant's past relevant work as actually and generally performed." (*Id.* at 30.) However, again relying on the VE's testimony, Judge Mastrangelo concluded that Frederick could perform certain jobs that existed in significant numbers in the national economy (and that were consistent with his RFC), including "meat clerk," "coffee maker," and "counter supply work." (*Id.* at 30–31 (citing 20 CFR §§ 404.1569, 404.1569a).) Thus, because he could perform such work, Judge Mastrangelo concluded that Frederick was not under a disability from January 1, 2017, through the date of the decision. (*Id.* at 31 (citing 20 C.F.R. § 404.1520(g)).)

This appeal concerns Judge Mastrangelo's assessment of (1) Frederick's impairments at Step Two and (2) Frederick's RFC at the precursor to Step Four. (*See* Pl. Br. at 1.) Thus, because "all other issues have been waived," the Court restricts its review to these issues. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

## II.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision

is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).

Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance

of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v.

Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225

F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This

evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399

F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the

ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even

if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38

(3d Cir. 2001). The court must "review the record as a whole to determine whether substantial

evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc.

Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject

evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why

probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981)

(citation omitted).

## B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are

unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III.    DISCUSSION

### A.    STEP TWO DETERMINATIONS

Frederick contends that Judge Mastrangelo made several errors at Step Two.[7] Frederick argues that Judge Mastrangelo "ignored" medical evidence in the record concerning Frederick's Immunoglobulin A deficiency ("IgA"). (Pl. Br. at 10–13.) Frederick also argues that Judge Mastrangelo incorrectly concluded that (1) Frederick's migraines were not a severe impairment and (2) Frederick's CFS was a non-medically determinable impairment. (*Id.* at 13–18.) Thus, Frederick contends that Judge Mastrangelo's RFC finding was "incomplete" and "lack[ed] support from the record." (*Id.* at 13, 17.)

---

[7] Frederick does not specify at which step the Court should review his arguments relating to his Immunoglobulin A deficiency, migraines, and CFS. (Pl. Br. at 10–18.) The Court will review these challenges under Step Two. While Frederick appears to question the Commissioner's suggestion that the arguments fall under Step Two, (*see* Reply at 1 (describing the Commissioner's suggestion that Frederick made Step Two arguments as a "strawman")), courts regularly assess arguments about the inclusion, determinability, and severity of impairments under Step Two, *see, e.g., Vanessa T-H v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *3–10 (D.N.J. Apr. 16, 2024).

"At step two, the ALJ considers whether the claimant has any 'severe medically determinable physical or mental impairment' that meets certain regulatory requirements." *Hess*, 931 F.3d at 201 (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). A "severe" impairment is one which—either on its own or in combination with other impairments— "significantly limit[s] [a claimant's] physical or mental ability to do basic work activities." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1520(c). The burden to prove an impairment is severe is not exacting: claimants "need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McRea*, 370 F.3d at 360 (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)). The Step Two inquiry thus operates as "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

Further, the ALJ's "omission of an impairment at Step Two is harmless error, provided that that ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis." *Vanessa T-H v. Comm'r of Soc. Sec.*, No 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)); *see Rutherford*, 399 F.3d at 553. Provided that the ALJ's analysis proceeds past Step Two, the relevant inquiry becomes whether the ALJ "considered the missing medically determinable impairment[s] in the RFC determination and [omission at Step Two] would not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, No. 20-4504, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021). In short, "[s]o long as the ALJ appropriately considered the claimant's impairments in [his] RFC assessment, there is not typically a basis for courts to remand to address the Step-Two determination." *Vanessa T-H*, 2024 WL 1635685, at *4.

12

While Judge Mastrangelo did not specifically identify Frederick's IgA *by name* at Step Two, he "adequately considered" the impairment by carefully addressing its underlying symptoms in determining Frederick's RFC. *Sara W. v. Comm'r of Soc. Sec.*, No. 23-869, 2024 WL 658047, at *4 (D.N.J. Feb. 16, 2024). The ALJ's RFC determination included extensive references to the medical records of Frederick's "pneumonia and upper respiratory infections," among the diagnoses Frederick argues indicated his IgA. (AR at 22–24; Pl. Br. at 5 n.17 (citing references to "UPPER RESPIRATORY INFECTION," "PNEUMONIA," "SINUS INFECTIONS," and "BRONCHITIS" as evidence of his IgA).) Judge Mastrangelo's detailed examination of the record also includes a citation to the *single* IgA diagnosis in the record. (*See* AR at 23–24 (citing AR at 573).) Moreover, Judge Mastrangelo considered Frederick's own IgA-related testimony asserting that he "suffered from frequent infections" like "sinus and chest infections," and hearing testimony that Frederick "could no longer work as a toll collector because the job requires interactions with people and [Frederick] suffered from frequent infections." (*Id.* at 28 (citing AR at 285–92).) Judge Mastrangelo thoughtfully considered Frederick's underlying IgA symptoms throughout his 19-page opinion, and thus the technical failure to *refer* to Frederick's specific symptoms as "IgA" at Step Two is form over substance and, thus, assuming *arguendo* any error, such was harmless.[8]

Moreover, Frederick's other Step Two arguments—challenging Judge Mastrangelo's findings that Frederick's migraines were non-severe and his CFS was not medically determinable—must also fail.[9] *See Salles*, 229 F. App'x at 145 n.2. Judge Mastrangelo analyzed

---

[8] Frederick's reference to *Kangas v. Bowen* is unavailing. 823 F.2d 775 (3d Cir. 1987). In *Kangas*, remand was necessary because the ALJ failed to consider evidence that the claimant "had been hospitalized six times in a sixteen-month period for problems with his lungs." *Id.* at 777–78. Here, not only did Judge Mastrangelo consider the effects of Frederick's IgA in determining his RFC, but the medical record does not indicate that Frederick's IgA caused any hospitalizations, and Frederick does not argue otherwise.

[9] In his brief, Frederick's "Issues Presented" only specifies challenges related to IgA, migraines, and CFS. (Pl. Br. at 1.) However, in his discussion of CFS, Frederick argues Judge Mastrangelo "committed similar errors regarding Plaintiff's *obsessional thoughts and acts*" at Step Two when he "never even provided a

13

both impairments at Step Two by assessing the record and supported his conclusions with substantial evidence. (AR at 18–19 (citing AR at 603–23, 725–809).) While Frederick argues that Judge Mastrangelo's analysis of both impairments did not incorporate certain medical evidence about those impairments,[10] (*see* Pl. Br. at 14, 16), the ALJ was not required to discuss "every tidbit of evidence included in the record" when making his conclusions, *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Even assuming, *arguendo*, that Judge Mastrangelo made any error regarding the severity of Frederick's migraines and CFS, it is clear that the ALJ still considered the symptoms of both impairments when determining Frederick's RFC, rendering any potential error harmless.[11] (AR at 24–25, 28 (citing AR at 285–92, 725–809)); *see Vanessa T-H*, 2024 WL 1635685, at *4 ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (quoting *Salles*, 229 F. App'x at 145 n.2)).

## B.    MEDICAL OPINION EVALUATIONS

Frederick next challenges Judge Mastrangelo's evaluations of the medical opinions in the

---

discussion whether this impairment was medically determinable." (*Id.* at 17 (emphasis added).) As Frederick himself cites, 'obsessional thoughts and acts' are often referred to or diagnosed as OCD. (*Id.* at 4–5, 5 n.14.) At Step Two, Judge Mastrangelo *did* discuss Frederick's OCD, which he concluded was not medically determinable. (AR at 19.) Because Frederick does not otherwise argue that Judge Mastrangelo's OCD analysis "affect[ed] the outcome of the case," any error was, at best, harmless. *Friday*, 2024 WL 658047, at *4.

[10] Frederick's citations to purportedly "ignored" evidence of the severity of his migraines are unconvincing. (Pl. Br. at 14.) Frederick's cited evidence represents (1) every individual mention of "headaches" and "migraines" in the record, even when resulting from a separate illness like COVID or the flu, (*see* AR at 760, 785–86), (2) every individual prescription Frederick received to treat his headaches, (*see id.* at 536), and (3) every recurring inclusion of "migraine headache" in his file, even when the medical visit was for unrelated issues, (*see id.* at 514, 516, 517, 519, 520, 522, 528, 529, 531, 532). This cumulative and sometimes irrelevant evidence does not undermine Judge Mastrangelo's conclusion that Frederick "received little treatment for this condition" and "[t]here are few symptoms noted in the record" about Frederick's migraines in any way. (*Id.* at 18.)

[11] Frederick's reliance on *Ivana M. v. Comm'r of Soc. Sec.* to support his CFS argument is misplaced. No. 20-7263, 2021 WL 4772139 (D.N.J. Oct. 13, 2021). In that case, the ALJ failed to consider *four* medical opinions concluding that the claimant would need ample off-task time each day because of her CFS—which the ALJ also determined was a *severe* impairment. *Id.* at *6–7. No such opinions or evidence existed here.

record, specifically Judge Mastrangelo's assessment of Frederick's treating physicians, Dr. Peeples and Ms. Scherbina. (Pl. Br. at 18–24.) Under 20 C.F.R. § 404.1520c, factors an ALJ should consider when assessing PAMFs and medical opinions include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." *Id.* § 404.1520c(a). Instead, the United States Court of Appeals for the Third Circuit has explained that 20 C.F.R. § 404.1520c(c) "requires administrative judges to explain only two of the[] factors: whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record."[12] *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (quoting 20 C.F.R. § 404.1520c(b)(2)) (noting these factors are called "supportability and consistency for short").

Frederick argues that "the ALJ skipped past vital information contained in the record" in reaching his conclusions about the medical opinions. (Pl. Br. at 20.) Specifically, Frederick argues that Judge Mastrangelo's evaluation of both opinions neglected to include certain key medical evidence, particularly related to Frederick's mental impairments.[13] (*Id.* at 20–23.) Frederick asserts

---

[12] The only exception is where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). In such a case, an ALJ is required to explicitly consider the other factors under 20 C.F.R. § 404.1520c(c). *Id.*

[13] Frederick's argument is at times difficult to follow. He argues that Judge Mastrangelo's analysis of Dr Peeples' opinion "lacks articulation regarding" evidence related to his OCD, migraines, IgA, and fatigue. (Pl's Br. at 20.) However, Frederick makes no specific arguments as to what, precisely, Judge Mastrangelo misevaluated with respect to Dr. Peeples' opinion. (*Id.* at 19–22.) In fact, the ALJ's analysis of Dr. Peeples' opinion *did* address Dr. Peeples' findings regarding Frederick's CFS, migraines, and mental impairments, (AR at 25), and Dr. Peeples offered no opinion about Frederick's IgA at all, (*see id.* at 603–23).

that because Judge Mastrangelo did not address this evidence supporting the opinions and did not otherwise provide "a meaningful explanation" for his conclusions, a remand is required. (*Id.* at 23 (quoting *Lori O. S. v. O'Malley*, No. 23-3859, 2024 WL 3522190, at *9 (E.D. Pa. July 24, 2024).)

The Court concludes that Judge Mastrangelo's evaluation of Dr. Peeples' medical opinions was supported by substantial evidence and provided "sufficient information to understand the ALJ's basis for rejection." *Emilia N. v. Comm'r of Soc. Sec.*, Civ. No. 21-18677, 2022 WL 14834594, at *4 (D.N.J. Oct. 26, 2022) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)). In assessing Dr. Peeples' opinions, Judge Mastrangelo applied the key supportability and consistency factors as required by 20 C.F.R. § 404.1520c(c). (AR at 25–26 (citing AR at 603–23).) Judge Mastrangelo assessed ample evidence in the record to conclude that Dr. Peeples' opinions (which generally found that Frederick's impairments "limited his ability to participate in gainful employment") were "not supported by or consistent with the claimant's treatment notes, the claimant's work activity, the claimant's daily activities, or Dr. Merlin's findings." (*Id.* at 25.) Judge Mastrangelo concluded that the record evidence—including Frederick's "general independence" with daily activities and the "normal" mental and physical findings recorded quite consistently throughout his treatment notes—"suggest[ed] greater functional abilities than those noted by Dr. Peeples." (*Id.* at 25–26.) Despite Frederick emphasizing individual entries in the record related to his mental impairments, (Pl. Br. at 20–22), Judge Mastrangelo was not required to discuss "every tidbit of evidence included in the record" when assessing Dr. Peeples' opinions, *Hur*, 94 F. App'x at 133. Accordingly, given that Judge Mastrangelo applied the proper regulatory factors and provided at least "'some indication' of the evidence [he] reject[ed] and [his] reason for doing so," the Court is satisfied that Judge Mastrangelo's assessment of Dr. Peeples' opinions is supported by substantial evidence. *Emilia*

16

*N.*, 2022 WL 14834594, at *4 (quoting *Burnett*, 220 F.3d at 121).

With respect to Ms. Scherbina's opinions, Frederick argues that Judge Mastrangelo improperly evaluated (1) the supportability of Ms. Scherbina's opinions when he found that she relied only on Frederick's "reported" symptoms and (2) the consistency of Ms. Scherbina's opinions with the rest of the record when he relied on Frederick's recent "work activity as a salient point in rejecting this treating opinion." (Pl. Br. at 22–23.) As to the supportability argument, Frederick argues that because Judge Mastrangelo did not address a portion of Ms. Scherbina's report outlining some of her observed findings, his supportability analysis violated 20 C.F.R. § 404.1520c. (*Id.*) As to the consistency argument, Frederick contends that Judge Mastrangelo should not have considered his work history in evaluating the consistency of Ms. Scherbina's testimony without including discussion of the job's accommodations. (*Id.*)

The Court is unpersuaded. At the outset, Ms. Scherbina's report overwhelmingly consists of Frederick's self-reported symptoms, (*see* AR at 600–02), and relies on a check-box, fill-in-the-blank form which renders her opinion "weak evidence at best." *Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 125 (3d Cir. 2017). While Frederick argues that the ALJ failed to specifically reference a modest blurb of the report purportedly containing Ms. Scherbina's direct observations, at least some portion of that section also appears to come from Frederick's self-reporting. By way of example, the three-line section of Ms. Scherbina's report includes that Frederick has "[d]ifficulty requesting help" and "[d]ifficulty keeping to appropriate topics." (AR at 601.) These findings, for which Ms. Scherbina provides no independent citation, source, or specificity, presumably would have to come from Frederick himself. (*Id.* at 600–02.) Even if some portion of Ms. Scherbina's conclusions on Frederick's social skills came from her own observations, Judge Mastrangelo—who otherwise thoroughly analyzed Ms. Scherbina's report—did not have to

perform a supportability analysis "with regard to every aspect of the medical opinion."[14] *Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *6 (D.N.J. Oct. 30, 2025) (cleaned up) (quoting *Pyle v. Comm'r of Soc. Sec.*, No. 23-815, 2024 WL 4278291, at *1 n.1 (W.D. Pa. Sept. 24, 2024)).

Agency regulations also permit Judge Mastrangelo's consideration of Frederick's work history in deciding his RFC.[15] 20 C.F.R. § 404.1571 (explicitly allowing consideration of work history); *id.* § 404.1520c(c)(5) (permitting consideration of "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"). Despite Frederick's suggestions otherwise, (*see* Pl. Br. at 10), there are no references in the record to any accommodations Frederick received at work; the only reference to work accommodations comes from Frederick's *counsel* at the February 2024 hearing, and even that provided no specifics. (AR at 42); *Flores v. Comm'r of Soc. Sec.*, No. 15-6356, 2016 WL 4689948, at *13 (D.N.J. Sept. 6, 2016) ("[A]ttorney statements or arguments are not testimony."). Thus, Judge Mastrangelo provided "sufficient development of the record and explanation of findings" that "considered the appropriate factors" of supportability and consistency to satisfy this Court's review.[16] *Jones v.*

---

[14] Assuming, *arguendo*, that Judge Mastrangelo's failure to consider those three sentences constitutes error, such error, if any, is harmless. As Judge Mastrangelo explained, Ms. Scherbina's opinion was otherwise inconsistent with record evidence showing "normal" mental and social functioning. (AR at 25); *see Thompson v. Comm'r of Soc. Sec.*, No. 12-4755, 2013 WL 5476432, at *6 n.3 (D.N.J. Sept. 28, 2013) ("[E]ven if the Court viewed the ALJ's decision as if he did not consider all of [a medical] report, those 'ignored' findings do not change the substantial evidence that supports [the] ALJ's ultimate conclusion.").

[15] Frederick's later reference to Social Security Ruling ("SSR") 84-25, which provides the policy for determining what is "considered an unsuccessful work attempt," is inapplicable where Judge Mastrangelo agreed at Step One that Frederick had not worked at substantially gainful levels. (*See* Pl. Br. at 25–26 (citing SSR 84-25, 1984 WL 49799 (Jan. 1, 1984)).) Accordingly, the Court rejects this argument both here and later in Frederick's brief. (*Id.* at 23 (Ms. Scherbina's consistency), 25–26 (Frederick's subjective testimony).)

[16] Frederick also argues, almost in passing, that Judge Mastrangelo's reliance on "stale State Agency opinions—without adequate explanation" was "independent legal error." (Pl. Br at 23–24.) The Court disagrees. The state agency medical opinions at issue were made based on direct examination of Frederick and were reported in December 2022 and March 2023. (AR at 26 (citing AR at 69–78, 80–88).) Because

*Barnhart*, 264 F.3d 501, 505 (3d Cir. 2004).

### C.    PLAINTIFF'S SUBJECTIVE TESTIMONY

Frederick's final argument is that, "if credited as true," his subjective testimony supports the conclusion that he is disabled. (Pl. Br. at 24.) In particular, Frederick argues that Judge Mastrangelo failed to "address relevant outcome determinative testimony" related to his IgA. (*Id.* at 25.) While "statements of the individual concerning his or her symptoms must be carefully considered" by the ALJ, the claimant's subjective statements alone cannot establish disability, and "the ALJ is not required to credit them." *Chandler*, 667 F.3d at 363 (citing 20 C.F.R. § 404.1529(a)). To that end, "[t]he credibility determinations of an administrative judge [made of a claimant] are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).

Here, not only does Judge Mastrangelo's credibility determination receive a high degree of deference, but Judge Mastrangelo also supported his assessment with extensive evidence in the record. Only "[a]fter careful consideration of the entire record" did Judge Mastrangelo determine that Frederick's statements about his symptoms—while consistent with his severe impairments— "were not entirely consistent with the medical evidence and other evidence in the record." (AR at 22–29 (citing AR at 223–33, 239–48, 250, 277–84, 339–50, 355–481, 518–73, 625–710, 717–23, 732–805)); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work."). The ALJ also considered Frederick's testimony in his Adult Function Report and

---

Frederick seeks benefits dating back to 2017, these opinions are hardly "stale." Frederick's own reliance on Ms. Scherbina's report, also dated March 2023, and Dr. Peeples' reports, dated August 2023, only further undermines his staleness argument. (*Id.* at 25 (citing AR at 599–602, 603–04, 605–23).)

February 2024 hearing testimony and concluded that Frederick's "testimony and statements cannot be found fully consistent with the evidence" in the record. (AR at 28–29 (discussing AR at 37–67, 285–92).) Frederick's central argument—that Judge Mastrangelo technically omitted Frederick's testimony about his IgA by not mentioning the condition by name—is belied by the ALJ's decision, which considered and incorporated Frederick's own claims that he "suffered from frequent infections" in both Frederick's function report and live hearing testimony. (*Id.* at 28.) Thus, Judge Mastrangelo's conclusion that Frederick's subjective complaints were inconsistent with the record is supported by substantial evidence. *See Hoyman*, 606 F. App'x at 681.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: December 29, 2025